### DEWELL et al. v. MIX.

(Circuit Court, D. Connecticut. June 19, 1902.)

#### No. 510.

1. CUSTOMS DUTIES—RECOVERY OF DUTIES PAID—NECESSITY OF PROTEST OR NOTICE OF CLAIM.

One who entered at the custom house as imported merchandise a cargo brought from a Porto Rican port after the treaty with Spain of April 11, 1899, and before the passage of the Foraker act, and paid the duties assessed thereon without objection or protest, either written or verbal, or notice of an intention to sue for their recovery, is precluded by such voluntary payment from recovering the money paid from the collector after he has paid the same into the treasury in the usual course of his duty.

Action in assumpsit, brought to the superior court of New Haven county, and removed to this court by defendant under Rev. St. § 634.

James D. Dewell, Jr., for plaintiffs.
Francis H. Parker, U. S. Dist. Atty., for defendant.

PLATT, District Judge. The situation when the suit was brought was as follows: After the ratification of the treaty with Spain, April 11, 1899, and prior to the passage of the act of congress known as the "Foraker Act," to wit, on May 29, 1899, and on July 21, 1899, the plaintiffs paid to the defendant, who was collector of the port at New Haven, certain moneys as duties upon cargoes of sugar and molasses brought by vessels from the Port of Ponce, in Porto Rico, to the port of New Haven. These cargoes were entered in the usual way at New Haven by the plaintiffs, and every step taken which would have been taken in the case of imported merchandise. The plaintiffs claim in their pleadings that the sums in question they "were unlawfully, and against their will, and in spite of their protests, and over their ob-

¶ 1. See Customs Duties, vol. 15, Cent. Dig. § 233.

jections, compelled to pay, and did pay, in order to obtain possession of the said molasses and sugar," and that they were not liable to duties because they were not "imported merchandise." The defendant claims:

"(1) That said sums of money were paid voluntarily by the plaintiffs to him as customs duties by law due and payable to the United States upon said cargoes, without objecting to said payment as illegal, and without any notice to the defendant not to pay over said sums to the United States, and without any notice to the defendant of an intention on their part to bring suit to recover back said sums of money. (2) That the plaintiffs did not, within ten days after paying said sums of money to the defendant, give notice in writing to the defendant setting forth clearly their objections to the payments, following the customs administrative act of 1890 applying to goods imported from a foreign country. (3) That the defendant, as collector, paid the said sums of money received from the plaintiffs upon the cargoes in question into the treasury of the United States before any notice was given him by the plaintiffs not to pay said sums to the United States."

The plaintiffs, in their argument, are disposed to lay especial stress upon the proposition that, since the goods came into port while the customs administrative act was in force, but were not "imported merchandise" under that act, it was unnecessary for them to "file a written protest within ten days," since such protest could only be directed toward "rate," "amount," or classification. They say distinctly that the "court in the De Lima Case clearly infers that, if the collector is apprised of the probable course of the ones from whom duties have been unlawfully exacted, it is all that is necessary." From the language of Mr. Dewell himself I must find that the "probable course" of the plaintiffs, which the collector had a right to expect, was to trust the government to do what was right. The Foraker bill was imminent, and the plaintiffs expected to fare as others would, relying upon the merciful fairness of the government in the final outcome. To demand the money, and bring suit if it was not paid back, was evidently an afterthought, and that course was not determined upon and put into execution until long after the moneys had in good faith and in regular course of business been paid over to the government by the collector.

Upon the evidence presented to me in this case I must and do find as a fact that no protest whatever was made by the plaintiffs against the entry of the cargoes as imported merchandise. Mr. Dewell, the senior partner of the plaintiff firm, who was really in charge of the matter, was very straightforward, fair, and frank when upon the witness stand. What he says, when boiled down, amounts to this: Whether Ponce was a domestic port or not was at the time under serious agitation. Mr. Dewell was advised to protest, but as a good citizen and patriotic business man he was disinclined to commit any act which might in any quarter be construed as evincing a disposition to hamper or embarrass the government in its fiscal relations. Consequently he refused absolutely to protest, and at a later date was very much disturbed when he learned that during his absence his partner had filed a written protest upon the entry of a small cargo. I am extremely sorry that a firm actuated by such high and pure motives should now be compelled to suffer, but, taking the law to be as I view it, such seems to be the inevitable conclusion. I shall be much pleased when I learn that the government has rewarded their conduct as it deserves to be

rewarded. There having been no protest, either written or verbal, I am unable to discover by what method of reasoning the plaintiffs arrive at the legal conclusion which they so vigorously assert. It is too plain for discussion that the plaintiffs have every right here which they would have had in the state court, but how could they have been successful there? They cite a number of Connecticut decisions to the point that one may recover moneys paid under a mistake, either of law or fact, in an action of assumpsit, because the moneys do not equitably or in the forum of conscience belong to the party to whom they were paid. Up to this point the argument is sound, but right there the principles applicable to the law of agency step in. In this case the moneys were paid to one well known to be· an agent, with certain definite duties to perform, of which duties an important one was an immediate accounting with and payment to the principal. Since no objection or protest was made, the payment was clearly a voluntary one. To put the matter in detail and more precisely: The duties were voluntarily paid without protest, under a mutual mistake of law, to the defendant, as a known agent of the United States, for the use of the United States, with the knowledge on the part of the plaintiffs that the proceeds would be immediately paid into the United States treasury, and without any notice from the plaintiffs not to pay them over, or of an intention to sue to recover them. It is manifest that these cargoes were entered as imported merchandise for the payment of duties thereon as such in the usual way and in the ordinary course of business; that the duties were liquidated and paid in the regular way; and that the defendant, as collector, received the amount of the duties as public moneys of the United States in good faith, in the ordinary course of business, and in like good faith paid the money as usual into the United States treasury. The De Lima Case, 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041, disposes of nearly every question involved. In fact, it would have settled the entire controversy in the plaintiffs' favor absolutely if a written protest had been filed, and quite possibly if an actual verbal protest had been made, setting forth in either case that the goods in question were not imported merchandise, forbidding the paying over of the moneys, and giving notice of an intention to recover by suit if necessary. It can make no difference whether the plaintiffs have, by their conduct, become estopped from setting up that the goods are domestic, or whether they are unable to maintain their suit because they paid as they did to an agent, who disposed of the moneys in the regular course of business, before any notice not to do so had been given him. In the De Lima Case (page 179, 182 U. S., and page 746, 21 Sup. Ct., 45 L. Ed. 1041) the court says:

"It is true that, to prevent the seizure of the sugars, the plaintiffs did enter them as imported merchandise, but any admission derived from that fact is explained by their protest against the exaction of duties upon them as such. They waived nothing by taking this course."

In the entire discussion of Elliott v. Swartwout, 10 Pet. 137–154, 9 L. Ed. 373, to be found in the De Lima Case on pages 177–180, 182 U. S., and pages 745, 746, 21 Sup. Ct., 45 L. Ed. 1041, the supreme court seems to assume that the objection, protest, and notice in the

Elliott v. Swartwout Case are necessary conditions precedent to a common-law recovery, and the conclusion appears to be inevitable that without such action no recovery could have been had in either case. I am quite familiar with the reasoning of the court in the Fassett Case, 142 U. S. 486, 487, 12 Sup. Ct. 295, 35 L. Ed. 1087, and also with the manner in which that reasoning was treated in the De Lima Case.

After a careful survey of the entire field of precedents, and after a deliberate weighing of the principles which ought to control this controversy, I am at last forced to the conclusion that the contest hinges upon whether or not the payment was a voluntary one, and made without even a hint to the collector that an attempt would be made to recover by force what was freely paid.

Let judgment be entered for the defendant to recover his costs.