ALONSO RIERA & CÍA. ET AL., DEMANDANTES Y APELANTES, *v.* BENEDICTO, TESORERO, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Segunda, en pleito sobre devolución de dinero.

No. 2447.—Resuelto en junio 20, 1923.

CONTRIBUCIONES—DEVOLUCIÓN DE CONTRIBUCIONES—PAGO BAJO PROTESTA—ACCIÓN CONTRA EL TESORERO.—La ley de marzo 9, 1911, impide cualquier acción contra el Tesorero de Puerto Rico para la devolución de contribuciones ilegalmente cobradas por él, a menos que dichas contribuciones fueran pagadas bajo protesta y que la acción se hubiera establecido dentro de treinta días de verificado tal pago.

ID. — ID. — DERECHO CONSTITUCIONAL — POLÍTICA PÚBLICA. — La Legislatura tiene facultad para fijar la responsabilidad en quien corresponda en todos los casos en que se trata de la devolución de contribuciones cobradas so color de un estatuto anticonstitucional, para prescribir un remedio adecuado al efecto y hacerlo exclusivo en el sentido de proteger a un funcionario público que, actuando sobre la presunción de que tal ley es válida, intenta hacerla efectiva, y la legislatura, como cuestión de política pública, ha hecho deliberadamente todo esto en la dicha ley de 1911.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. R. Martínez Alvarez* y *J. J. Ortiz Alibrán.*

Abogados del apelado: *Hon. Attorney General* y *Sr. A. Arroyo Rivera.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Esta acción, por su nombre, estilo y forma, se establece contra José E. Benedicto, Tesorero de Puerto Rico, y se califica tanto en el título como en la parte principal de la demanda como una acción sobre devolución de dinero pagado en la compra de estampas de garantía.

Los demandantes, que constituyen un gran número de fabricantes y exportadores de tabaco, alegan en substancia, como causa de acción contra dicho demandado, que dicho de mandado es mayor de edad, con residencia en San Juan y que como Tesorero de Puerto Rico tiene a su cargo el cobro y recaudación de todos los impuestos contributivos designa- dos por las leyes a favor del Pueblo de Puerto Rico; que la Legislatura de Puerto Rico en diciembre de 1917 aprobó una ley titulada "Ley para enmendar una Ley titulada 'Ley para proteger los cigarros de Puerto Rico contra falsifi- caciones mediante inspección pericial adecuada y la emisión de estampas de garantía, determinando la procedencia del tabaco empleado en la elaboración de dichos cigarros para la exportación y para otros fines,' aprobada en marzo 11 de 1915;" que esta ley autoriza al Tesorero de Puerto Rico para suministrar a los fabricantes de cigarros o exportado- res de tabaco en rama en Puerto Rico estampas que se cono- cerán como estampas de garantía para cigarros designados para la exportación o consumo de Puerto Rico y para tabaco en rama para la exportación, y que dichas estampas deberán fijarse necesariamente en cada cajita o paquete original, cual- quiera que sea la capacidad de éste, en sitio visible para el consumidor antes de ser sacados del sitio donde se elaboran o preparan para la exportación; que la sección 3 de dicha ley dispone que el valor de cada estampa de garantía para ca- jitas o paquetes originales conteniendo cigarros para la ex- portación o consumo en Puerto Rico será de un centavo cada una y dé veinticinco centavos cada uno de los envases que cotengan tabaco en rama, picadura o tabaco despalillado para la exportación; que dicha ley fué puesta en vigor y empezó a

ejecutarla el Tesorero de Puerto Rico allá por el mes de marzo de 1918 y continuó en vigor hasta el mes de septiembre de 1919, durante cuyo transcurso el Tesorero de Puerto Rico, o sea, el demandado, estuvo exigiendo de acuerdo con dicha ley, que todos los fabricantes de cigarros y exportadores de tabaco en rama, picadura o tabaco despalillado para la exportación o consumo en Puerto Rico fijasen estampas de garantía de un centavo en cada paquete o cajita de cigarros fabricados en Puerto Rico y asimismo fijaran estampas de garantía de veinticinco centavos en cada envase conteniendo tabaco en rama, picadura o tabaco despalillado para la exportación antes de ser sacado del sitio donde se elaboraba o preparaba para la exportación o consumo en Puerto Rico; que durante el período de tiempo transcurrido desde el mes de marzo de 1918 hasta el de septiembre, inclusive, de 1919, algunos de los demandantes eran fabricantes de cigarros y otros exportadores de tabaco en rama en Puerto Rico, a quienes el Tesorero de Puerto Rico, o sea, el demandado en este caso, les exigió que en cada paquete o caja de tabaco de cigarros que fabricasen en Puerto Rico para la exportación o consumo en Puerto Rico le fijasen una estampa de garantía; en julio 12 de 1920 los demandantes didirigieron una carta al Tesorero de Puerto Rico, demandado ahora, manifestándole entre otros particulares, que las cantidades de dinero relacionadas en la demanda y pagadas en la compra de estampas de garantía las pagaron indebidamente y fueron injustas e ilegalmente exigidas y cobradas por el Tesorero de Puerto Rico, que es el demandado, por el motivo de que dicho cobro lo hizo en virtud de una ley inconstitucional que fué declarada nula por sentencia dictada por la Corte de Circuito de Apelaciones de los Estados Unidos en marzo 19 de 1919 en el caso de *American Tobacco Co.* v. *The Treasurer of Porto Rico,* demandado en este caso, y pidiendo al referido Tesorero de Puerto Rico que les devolviese las ameritadas cantidades "como medida

justa, equitativa y legal del Pueblo de Puerto Rico que no debe sancionar la exacción de bienes de los contribuyentes sin el debido procedimiento de ley,'' a cuya reclamación el Tesorero contestó que el dinero así cobrado había sido ingresado en los fondos generales de Tesorería y que el Tesorero de Puerto Rico carecía de facultades para atender a tal reclamación; que los demandantes en octubre 29 de 1920 pidieron por escrito reconsideración de esta resolución, a lo que contestó el Tesorero en noviembre 26 de 1920 sosteniendo la opinión dada anteriormente; que si los demandantes hubieran rehusado o dejado de fijar las estampas de garantía, como queda dicho, de acuerdo con la ley y lo ordenado por el Tesorero de Puerto Rico, éste les hubiera embargado y confiscado los paquetes en cuestión además de iniciar el proceso criminal correspondiente; que desde septiembre de 1919 el Tesorero de Puerto Rico, o sea, el demandado, no ha exigido a los demandantes fijar en cada paquete de cigarros ni en los envases de tabaco en rama las estampas de garantía para la exportación o consumo en Puerto Rico; que la ley de diciembre 3 de 1917 a que se ha hecho referencia, por virtud de la cual el Tesorero de Puerto Rico exigió a los demandantes la fijación de estampas y los demandantes se vieron obligados a comprar las mismas, como queda dicho, fué declarada nula por la sentencia de marzo 19 de 1919, mencionada anteriormente; que habiendo sido declarada inconstitucional la referida ley no tuvo existencia legal a la fecha de su promulgación ni en ningún tiempo después en virtud de lo cual el impuesto en cuestión fué pagado injustamente por los demandantes, e indebidamente exigido y cobrado por el Tesorero de Puerto Rico como se ha alegado y que los demandantes ''en virtud de las anteriores alegaciones tienen perfectísimo derecho a recobrar del Pueblo de Puerto Rico las cantidades por tales conceptos pagadas.''

En la súplica de la demanda se pide que se dicte sen-

tencia ''condenando al demandado José E. Benedicto, Tesorero de Puerto Rico, a reintegrar a cada uno de los demandantes en esta acción la cantidad pagada por el concepto de estampas de garantía expresada y relacionada detalladamente en esta demanda con todo lo demás que sea procedente.''

Fué formulada una excepción previa por el fundamento, entre otros, de que la corte carecía de jurisdicción para conocer del caso, porque la acción ejercitada es en realidad de verdad una acción contra el Pueblo de Puerto Rico, que no ha prestado su consentimiento para ser demandado en este caso. La corte inferior sostuvo este criterio, y sin resolver los otros fundamentos de excepción previa, desestimó la demanda por falta de jurisdicción.

Hacemos la siguiente cita de la opinión emitida por el juez sentenciador:

''Afirma la representación de los demandantes en su bien estudiado alegato, que esta acción se basa en el artículo 1796, del Código Civil vigente; que es una acción para recobrar lo indebidamente cobrado por el Departamento de Tesorería o entregado a sus agentes; que es la acción denominada en el antiguo derecho común (*common law*) *indebitatus assumpsit* que pueden iniciarse contra un funcionario colector de la contribución ilegalmente cobrada; y que el presente pleito se dirige contra el Tesorero y no contra El Pueblo de Puerto Rico, por la razón de que dicho funcionario tiene en su poder el importe de los sellos de garantía que dicen haber comprado los demandantes. Pero en la demanda no aparece alegación alguna positiva de que las sumas en cuestión permanezcan en la posesión o poder del funcionario que las recaudara. Por el contrario en el párrafo 6º. de la misma, se aduce el hecho de que el Tesorero, al negarles la devolución solicitada de lo pagado de los sellos, les contestó, como razón de su negativa, que el dinero así cobrado había sido ingresado en los fondos de la Tesorería, esto es, ya fuera de la posesión temporal y transitoria del oficial recaudador y se hallaba en la de El Pueblo de Puerto Rico, aunque bajo la custodia del Tesorero que carece de facultades para devolverlo, así como para verificar cualquier otro egreso sin la debida autorización expresa de la

ley que lo justifique.  Y como los demandantes en su alegato admiten el principio general de que cuando se entabla una acción contra un funcionario público y su objeto es privar a El. Pueblo de Puerto Rico de sus fondos propios o de bienes del pueblo de que esté en posesión, tal acción en realidad de verdad se dirige contra el Pueblo, no habiendo en la demanda alegación que contradiga lo manifestado por el Tesorero en su negativa, que equivale a la afirmación de que el dinero que se pretende recobrar se halla en posesión de El de Puerto Rico y no en poder del funcionario recaudador; y alegándose a mayor abundamiento en el párrafo 9º. de la demanda que por los hechos expuestos en ella los demandantes tienen derecho a recobrar de El Pueblo de Puerto Rico las cantidades pagadas lo que supone la afirmación implícita de que El Pueblo se ha incautado o ha adquirido la posesión de dichos fondos, preciso es concluir que la acción en realidad de verdad es contra El Pueblo de Puerto Rico y no contra el Tesorero de Puerto Rico.

    *     *     *     *     *     *     *

. ''Se trata de recobrar de El Pueblo de Puerto Rico cantidades pagadas en concepto de rentas, impuestos o derechos ilegalmente cobrados.  Y siendo así creemos que este caso está comprendido entre los que abarca la ley de 1911, enmendada en 1920.  Y como no aparece en la demanda que se verificasen los pagos bajo protesta, fuerza es llegar, como llegamos, a la conclusión de que la presente acción no ha sido previamente autorizada por las referidas leyes.  ¿Lo ha sido en virtud de la ley de 1916?  En el acto de la vista de las excepciones la representación de los demandantes argumentó en sentido afirmativo.  En el alegato escrito no insiste en su teoría sino que adopta la de que la acción es de '*indebitatus assumpsit*' cobro de lo indebido.  La sección primera de la Ley núm. 76 de 1916, párrafo 'B' autoriza acción contra El Pueblo de Puerto Rico para reivindicar propiedad mueble o inmueble.  El dinero es propiedad mueble, pero la acción reivindicatoria no es la acción sobre cobro de dinero.  Aquélla para ejercitarse requiere entre otros requisitos indispensables el de la identificación de la cosa objeto de la reivindicación.  Busca la vindicación, la reintegración de un estado de derecho infringido acerca de una cosa determinada específica, no genérica.  El dinero no es, ni puede ser objeto de una acción de esta clase a menos que se marque o señale de algún modo o se especifique, con relación al poder o facultad de identificación.  (14 Cal. 410; 29 Cal. 619; 63 Cal. 24.)  No está, pues, autorizada la ac--

ción entablada en el presente caso, por las disposiciones de la ley de 1911, ni por las de 1916, ni por las de 1920, ni por otra alguna. La corte no puede conocer del caso porque El Pueblo de Puerto Rico no ha dado su consentimiento para ser demandado. Resuelto en este sentido el primer motivo de las excepciones previas contra la demanda parece innecesario examinar y resolver acerca de lo demás.''

Para los fines de esta opinión puede admitirse, sin resolver, que la corte inferior incurrió en error en la conclusión a que así llegó. Sin embargo, por guardar relación con este punto, y como indicativo de algunas otras cuestiones interesantes, incluso la del efecto de un error o mal entendimiento común a una y otra parte respecto a la validez de la ley de 1917, a falta de protesta, podemos referirnos de paso a los casos de *Poindexter* v. *Greenhough,* 114 U. S. 270 (citado por los apelantes y en el cual descansan) ; *Central Insurance Co.* v. *Gromer,* y casos citados en él (en el cual los abogados del apelado están satisfechos en fundarse por establecer la proposición de que ''una acción para el pago de contribuciones cobradas ilegalmente, aunque en la forma contra el Tesorero, es una acción contra *El Pueblo de Puerto Rico*'') 26 R. C. L. 473, sec. 426, *Atchison, etc., Railway Co.* v. *O'Connor,* 223 U. S. 280; *International Paper Co.* v. *Burril,* 260 Fed. 664; nota a los casos de *Louisville & N. R. Co.* v. *Burr, etc.,* 44 L. R. A. (N. S.) 189, 193; *Louisiana* v. *Jumel,* 107 U. S. 711; *Elliot* v. *Swartout,* 10 Peters, 137; *Dowell* v. *Mix,* 116 Fed. 664, y nota al caso de *Messer-Moore Insurance, etc., Co.* v. *Trotwood Park Land Co.,* Ann. Cases 1912 D. 721.

Pero aparte de todas estas cuestiones, estamos persuadidos de que la ley de 1911 es un impedimento para cualquier clase de acción contra el Tesorero de Puerto Rico para el pago de contribuciones cobradas por él ilegalmente, a no ser que hayan sido satisfechas bajo protesta, y establecida dicha acción dentro de los treinta días siguientes a su cobro.

Los artículos 1 al 5 de esa ley se citan íntegramente

en el caso de *Ensenada Estates* v. *Hill,* 24 D. P. R. 492.    El
artículo 1 comprende todos los casos en los cuales, so pretexto
de autoridad oficial, se alegan o reclaman contribuciones
como debidas por alguna persona y se toman medidas para el
cobro de las mismas.    Por las disposiciones del artículo 2 se
exige al Tesorero que ingrese en el Tesoro todas las canti-
dades recaudadas, no obstante el hecho de que las mismas
han sido pagadas bajo protesta.    Entonces, como prescribe
el artículo 3, la parte qué pague esa contribución bajo pro-
testa podrá, dentro del plazo improrrogable de treinta días,
"demandar al mencionado Tesorero para obtener la devo-
lución de la citada suma;" y al expedirse la debida certifi-
cación por el tribunal el Tesorero queda autorizado a hacer
su reintegro "dando preferencia a ese pago sobre cualquier
otra reclamación que se haya hecho al Tesoro."    El artículo
4 prescribe que "no se dará otro recurso en casos de re-
caudación ilegal de contribuciones o rentas, o en casos de
tentativas para recaudar ilegalmente contribuciones o ren-
tas."    Y dispone el artículo 5 que "en todos los casos en
que, por cualquier motivo una persona alegue que la contri-
bución que se la ha cobrado fué recaudada injusta o ilegal
mente el recurso que ha de utilizar dicha persona es el que
queda determinado antes y ningún otro."

Ante estas terminantes prescripciones no estamos dis-
puestos a imputar a la Legislatura ninguna intención de que
el Tesorero deba quedar sometido a alguna responsabilidad
personal por cantidades ingresadas de tal modo por él en el
Tesoro, de conformidad con el mandato expreso de la ley;
que esté él obligado a pagar con su dinero particular aque-
llas sentencias que puedan dictarse contra él en acciones per-
sonales establecidas mucho después que se había perdido el
remedio que concede la ley, sin más compensación por esta
injusticia que el privilegio de esperar la conveniencia de que
alguna asamblea legislativa sucesiva establezca el remedio
que crea procedente.    Y si no hubiere ninguna responsabi-

lidad personal por cantidades ilegalmente exigidas y pagadas bajo protesta, entonces, *a fortiori,* no puede existir ninguna por cantidades recibidas de buena fe y sin aviso de alguna reclamación u objeción de cualquier clase.

Que la Legislatura tiene la facultad de imponer la responsabilidad donde corresponda, en todos los casos que envuelvan el cobro de contribuciones satisfechas so pretexto de un estatuto que es anticonstitucional, de prescribir un remedio adecuado y hacer que el mismo sea exclusivo hasta el punto de proteger a un funcionario público que actuando bajo la presunción de que tal ley es una disposición válida trata de hacerla cumplir, es cuestión que no está por más tiempo abierta a discusión.   Y que la Legislatura Insular, como cuestión de política pública, deliberadamente ha dado lugar a esta situación en la ley de 1911, creemos que es asimismo claro.   Véanse los casos de *Snyder* v. *Marks,* 109 U. S. 189; *Shelton* v. *Platt*, 139 U. S. 591, 597, y de *Burril* v. *Locomobile Co.*, 258 U. S. 34.

Debe confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf y Aldrey.

El Juez Asociado Sr. Franco Soto no intervino en la resolución de este caso.