### In re CATTS. In re MERCHANTS' & MANUFACTURERS' EXCHANGE OF NEW YORK. Claim of PAVIA.

District Court, S. D. New York. June 25, 1929.

Leo Oppenheimer and Samuel H. Kaufman, both of New York City, for trustee Morris.

Ernst & Gale, of New York City, for trustee Weiss.

Gotthold, Pitkin, Rosensohn & Travieso and Samuel J. Rosensohn, all of New York City, for Antonio Melian Pavia.

GODDARD, District Judge. This matter comes before the court on a petition to review an order of the referee in bankruptcy allowing a claim of $125,000 and interest against the trustee in bankruptcy of the estate of the Merchants' & Manufacturers' Exchange of New York, and the trustee in bank-

ruptcy of the estate of Robert M. Catts, paid by the claimant under a contract entered into on January 5, 1927, between Joseph L. Greenberg, as party of the first part, and Antonio Melian Pavia, the claimant, as party of the second part. In substance, the contract provided for the sale of the leasehold of the premises bounded by Lexington and Park avenues and Forty-Sixth and Forty-Seventh streets, in the city of New York, upon which the building known as the Grand Central Palace is located. The Merchants' & Manufacturers' Exchange and Catts did not own the leasehold, but the contract contemplated that it should be acquired by them and conveyed to Pavia. Pavia had paid $125,000 on the contract and was to make other payments. It has been stipulated that Robert M. Catts and the Merchants' & Manufacturers' Exchange were the real parties to the contract with Pavia, and that Greenberg was merely a nominal party acting in their behalf.

On February 3, 1927, the Merchants' & Manufacturers' Exchange of New York and Robert Catts were adjudicated bankrupts, and Mr. Robert C. Morris was elected trustee for the estate of the Merchants' & Manufacturers' Exchange of New York, and Mr. Louis S. Weiss was elected trustee of the estate of Robert M. Catts.

On August 2, 1927, Pavia filed with the referee proofs of claims against the trustees of the respective estates, which stated the nature of the claim as follows:

"That on or about the 5th day of January, 1927, deponent entered into an agreement with one Joseph L. Greenberg, as agent for the bankrupt, and Robert M. Catts, whereby the deponent agreed to buy and the bankrupt and Robert M. Catts, who has since been adjudicated bankrupt, agreed to sell, for the sum of Ten Million Six hundred thousand dollars ($10,600,000) a certain lease dated May 22, 1922, made by the New York State Realty and Terminal Company, a New York Corporation, as lessor, covering property situated in the Borough of Manhattan, City and State of New York, comprising the entire block bounded by Lexington Avenue, Park Avenue, 46th Street and 47th Street, in said City, with the buildings thereon, as in said lease more particularly set forth, and deponent then and there paid the sum of One hundred twenty five thousand dollars ($125,000) on account of the purchase price thereof, pursuant to said agreement. That in violation of their duties under said contract, the bankrupt and Robert M. Catts did not then nor at any time prior to June 11, 1927, have title to such lease, and did not acquire the

same, and were not able to convey to the deponent the property purchased by deponent and agreed to be sold and conveyed by them;

"That the deponent has elected to rescind and has rescinded said agreement because of the failure of the bankrupt and Robert M. Catts, bankrupt, to make such conveyance, and has demanded of the bankrupt and Robert M. Catts, bankrupt, and of Joseph L. Greenberg, agent for the said bankrupt and for Robert M. Catts, bankrupt, the repayment of the said sum of One hundred twenty-five thousand dollars ($125,000) and interest; that the bankrupt, and Robert M. Catts, bankrupt, and Joseph L. Greenberg have refused to repay to deponent any portion of said sum, and that said payment is now due to deponent."

The respective trustees in bankruptcy have filed objections to the claims on the ground "that the bankrupt is not indebted to the claimant in any sum whatever."

An important feature of the case at bar is that it is not the ordinary contract for the sale of real estate where the seller has title and the purchaser, by reason of the equitable theory of specific performance, has acquired an equitable interest in the property. There was no existing res in the possession of the bankrupts. It was an executory contract and contemplated that the property should be acquired by the seller and subsequently transferred to the purchaser. .

In Conway v. White, 292 F. 837, at page 843, Judge Rogers, in the opinion of the Circuit Court of this circuit, stated: "We think that it is not open to question in the federal courts that the bankruptcy of a party to an executory contract operates to discharge it. In Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 591, 36 S. Ct. 412, 415 (60 L. Ed. 811, L. R. A. 1917B, 580), Mr. Justice Pitney, speaking for the Court, said: 'In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance.' And it was concluded that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement. Conceding that the trustee in bankruptcy had a right to elect to assume performance of the contract, he did not elect to assume it, 'and so the matter is left as if the law had conferred no such election.'"

See, also, Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953.

Certainly, unless the trustee assured the purchaser by affirming the contract that the trustee adopted it and would carry it out, the purchaser was not required to make further payments. Upon the adjudication of the bankrupts, the title to all their assets, as well as the right to acquire the property which the bankrupts had contracted to obtain and transfer to the purchaser, passed to the trustee. Therefore, it is apparent that they (the bankrupts) were not then able to carry out their end of the contract and they had failed to maintain the usual contractual relations which they were required to maintain up to the time of its performance.

Bankruptcy is a complete disablement from performance of a contract and the equivalent of an out and out repudiation, subject, of course, to the right of the trustee to carry out the contract for the benefit of the bankrupt estate. In re Neff (C. C. A.) 157 F. 57, 61, 28 L. R. A. (N. S.) 349. See, also, In re Stern (C. C. A.) 116 F. 664; Collier on Bankruptcy (13th Ed.) vol. 2, p. 1410.

If the trustee felt that he was in a position to do so and that it was an advantageous contract for the estate to adopt, he might have done so and thereby obligated the estate. But it is evident from the record that the trustee has carefully refrained from assuming the contract, although upwards of a year and a half has passed, apparently fearing that by so doing he might subject the estate to liability for a real estate broker's commission, when it was not likely that the contract for the sale of the property could be carried through.

The referee has found, and I agree with him, that up to the time of the adjudication neither side had violated the contract. Claimant now seeks to recover his damages, which I think he is clearly entitled to, and therefore the order of the referee allowing his claim is affirmed.