In re ROBERTSON.

No. 346.

District Court, W. D. Arkansas, Harrison Division.

Nov. 19, 1941.

D. D. Panich, of Little Rock, Ark., for bankrupt.

Virgil D. Willis and Eugene Moore, both of Harrison, Ark., for claimants W. H. Coutts, Jr., and R. A. Clymer.

MILLER, District Judge.

This matter comes before the court on a petition to review an order of the referee in bankruptcy entered on August 16, 1941, overruling a motion to dismiss the claim of W. H. Coutts, Jr., and R. A. Clymer, for damages growing out of the failure of the bankrupt and the trustee to carry out the terms of a certain executory contract.

The certificate by the referee discloses no disputed questions of fact and set forth chronologically the facts are as follows:

(1) On October 21, 1940, the bankrupt entered into a written contract with R. A. Clymer and W. H. Coutts, Jr., by the terms of which the bankrupt agreed to sell to the said R. A. Clymer and W. H. Coutts, Jr., 1613 acres of land known as the Robins ranch and situated in Baxter County, north of Mountain Home, Arkansas, for a consideration of certain livestock, one international truck and $3,250 in money, which livestock, truck and money was to be paid by the said R. A. Clymer and W. H. Coutts, Jr., to the bankrupt upon the execution by the bankrupt of a "complete warranty deed, with all taxes paid up to date, including the year 1940, together with a good and merchantable abstract of title brought up to date, including the transfer of said property to said parties of the second part" R. A. Clymer and W. H. Coutts, Jr., at which time the aforesaid property (the livestock, truck and money) will be delivered by said parties of the second part to the party of the first part (the bankrupt).

(2) T. E. Robertson was adjudged a bankrupt on November 30, 1940, and on December 13, 1940, the first meeting of the creditors was held pursuant to notice, and T. L. Jackson was appointed trustee and since said time has been and is now the duly qualified and acting trustee of the bankrupt.

On February 18, 1941, the bankrupt filed an amended petition proposing an arrangement with his unsecured creditors under the provisions of Chapter 11 of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., that pursuant to notice a meeting of creditors was held and on March 6, 1941, more than a majority in number and amount approved said proposed arrangement, and after notice, the referee on March 20, 1941, entered an order approving said proposed arrangement as

being equitable and made in good faith and for the best interests of the creditors; that such order of the referee has now become final and among other things the order directed that the remaining unliquidated assets of the bankrupt estate be returned to the petitioner or his nominee; that a part of the unliquidated assets were the lands situated in Baxter County, north of Mountain Home, Arkansas, and which were included in the contract hereinbefore mentioned.

(3) On April 24, 1941, the bankrupt, by his attorney, filed a petition seeking an order of cancellation of the contract.

(4) On May 5, 1941, the trustee, T. L. Jackson, filed a petition asking that he be authorized to execute to the nominees of the bankrupt his trustee's deed to the land described in said petition, which are the lands included in the contract hereinbefore referred to. On the same date, May 5, 1941, the referee entered an order authorizing, directing and empowering the trustee to execute his deed conveying said lands to Hugh Hackler and Varo Hucheson, nominees of the bankrupt.

(5) On May 8, 1941, the referee entered an order on the petition to cancel the contract in which the referee ordered the said R. A. Clymer and W. H. Coutts, Jr., to appear on May 15, 1941, and show cause why the contract should not be cancelled.

(6) On May 13, 1941, W. H. Coutts, Jr., filed a motion asking that the hearing on the petition to cancel the contract be extended until May 30, 1941, and the hearing was continued.

(7) On June 23, 1941, the said R. A. Clymer and W. H. Coutts, Jr., filed a motion admitting the execution of the contract and alleging:

"Respondents would state that your petitioner has wholly failed to comply with the terms of the contract sought to be cancelled herein by failing and neglecting to furnish an abstract showing merchantable title to said lands in that the abstract discloses at sheet 163 that 400 acres of the land contracted to these respondents was confirmed in the State of Arkansas on the 15th day of April, 1935, in the Chancery Court of Baxter County, Arkansas; that sheets 159 to 162, inclusive, disclose numerous tax forfeitures and sales of lands described at the respective pages and which were contracted to your respondents; that sheet 171 of the abstract discloses that one Otis Robins is the owner of approximately 1000 acres of the lands contracted to respondents and it is further alleged that Otis Robins has informed these respondents that he is the owner of an undivided one-third interest therein and your respondents would finally state that the abstract discloses no record chain of title to any of the land described in the contract.

"Respondents would further plead that on October 24, 1940, petitioner delivered to them a warranty deed describing the lands contract and has failed, neglected and refused to furnish any other deed from any person or party who is the record owner of said lands, including the Trustee in Bankruptcy, and that the abstract was certified to on the 19th day of February, 1940.

"Respondents finally disclose that they have been able, ready and willing to perform the contract but that the petitioner has further breached said contract by failing and neglecting to tender the sum of $960.00, which represents the amount necessary for care and feed of livestock which they sold to the petitioner upon the execution of the contract and which amount represents a prior lien thereon.

"Whereupon, Respondents would pray for specific performance of said contract, for their costs herein laid out and expended and for all general, legal and equitable relief."

(8) On the same date, June 23, 1941, the bankrupt filed a motion for authority to withdraw his petition to cancel the contract which he had filed on April 24, 1941.

(9) On August 9, 1941, the bankrupt filed a motion to dismiss in which he asked that the petition to cancel the contract, together with the response filed thereto by R. A. Clymer and W. H. Coutts, Jr., be dismissed and expunged from the records.

In the motion the bankrupt alleged:

"Petitioner states that a hearing was had upon petitioner's original Petition to Cancel Executory Contract, on June 23rd, 1941, that upon the opening of said hearing, petitioner asked leave of Court to withdraw said petition aforesaid but that said leave was denied; that thereafter the Referee in Bankruptcy permitted the said W. H. Coutts, Jr., and R. A. Clymer to file a pleading in response to said Petition to Cancel Executory Contract wherein said respondents specifically plead breach of contract and pray for specific performance thereof,

for their costs and for all general, legal and equitable relief.

"Petitioner respectfully represents that this Honorable Court is without jurisdiction to hear and determine the issues raised by said response and by said Petition to Cancel Executory Contract for the following reasons, to-wit:

"(1) Respondents have filed no Proof of Claim within the time prescribed by the Bankruptcy Act.

"(2) Respondents have failed and refused to comply with the provisions of Section 57 (a) (b) (d) (n) of the Bankruptcy Act [11 U.S.C.A. § 93, subs. a, b, d, n].

"(3) Respondents have no provable claim in Bankruptcy within the meaning of Section 63(1) (4) (8) (9) of subdivision (a); or Section 63(c) (d) [11 U.S.C.A. § 103, sub. a(1, 4, 8, 9); subds. c, d].

"(4) That petitioner has complied with all orders of the Court with respect to completion of the arrangement proceedings; that the Court directed the return to petitioner of the residue of the assets of the bankrupt estate including the lands in question in said Contract dated October 21st, 1940, that the Court directed the Trustee in Bankruptcy to sell and convey said lands; that the Trustee in Bankruptcy acting under such authority, did sell and convey said lands to a third party for a bona fide consideration for the benefit of petitioner; that the Court approved said sale and the Deed of conveyance executed by said Trustee in Bankruptcy; that said lands are not in the custody, possession or control of the bankruptcy estate or petitioner and that the Court is without jurisdiction to determine the question of specific performance or any other question arising under said contract.

"5. That the issues raised by respondents are wholly plenary, that this Court is without plenary jurisdiction; that petitioner is entitled to a trial by jury on said issues."

(10) On August 16, 1941, the referee entered an order overruling the motion of the bankrupt to dismiss.

(11) On August 23, 1941, the bankrupt filed his petition for review of the order of the referee overruling the motion to dismiss in which he alleged that the said R. A. Clymer and W. H. Coutts, Jr., had filed no proof of claim within the time prescribed by law; that they had failed and refused to comply with the provisions of Section 57, sub-divisions (a), (b), (d) and (n) of the Bankruptcy Act, 11 U.S.C.A. § 93, subs. a,

b, d, n; that they have no provable claim in bankruptcy within the meaning of sub-divisions (1), (4), (8) and (9) of sub-division (a) of Section 63; or within the meaning of sub-divisions (c) and (d) of Section 63 of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a(1, 4, 8, 9); subs. c, d; that the issues raised by the said R. A. Clymer and W. H. Coutts in their response to the motion to cancel the contract are wholly plenary, and that the court was without jurisdiction to hear and determine the issues raised. and that the petitioner was entitled to a trial by jury.

(12) The bankrupt further alleged that the lands in question were not in the custody, possession or control of the bankruptcy estate and that the court was without jurisdiction to determine the question of specific performance or any other questions arising under said contract.

(13) The bankrupt further alleged that the referee in bankruptcy erred in ordering that said referee in bankruptcy does have jurisdiction to hear and determine the claim of the said Clymer and Coutts for damages, and in ordering the dismissal of said motion aforesaid with leave to the parties to adduce their respective proof on all issues on the matters, exclusive of the jurisdictional question.

With the above facts before the referee, he held: "Insofar as the motion goes to the lack of jurisdiction of the referee to hear and determine the claim of Coutts and Clymer for damages, if any, the referee is of the opinion that said motion ought to be overruled on the authority of In re Catts [D.C.] 33 F.2d 963."

The referee granted leave to the parties to adduce proof as to damages and all other issues on the merits.

In 17 Corpus Juris Secundum, Contracts, § 471, pages 972, 973, it is said: "Unless the trustee in bankruptcy may and does elect to assume the performance of an executory contract, the bankruptcy of a party, voluntary or involuntary, constitutes a breach, and, as is explained in the title Bankruptcy § 394 b(2), gives rise to a provable claim."

In Re Catts, D.C., 33 F.2d 963, 964, the opinion relied upon by the referee, it is stated:

"In Conway v. White [2 Cir.], 292 F. 837, at page 843, Judge Rogers, in the opinion of the Circuit Court of this circuit, stated: 'We think that it is not open to question in the

668

federal courts that the bankruptcy of a party to an executory contract operates to discharge it. In Central Trust Co. v. Chicago Auditorium Association, 240 U.S. 581, 591, 36 S.Ct. 412, 415 (60 L.Ed. 811, L.R.A.1917 B, 580), Mr. Justice Pitney, speaking for the Court, said: "In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance." And it was concluded that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement. Conceding that the trustee in bankruptcy had a right to elect to assume performance of the contract, he did not elect to assume it, "and so the matter is left as if the law had conferred no such election." '

"See, also, Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953."

In Collier on Bankruptcy, 14th Ed., Volume 3, page 1884, it is said: "The Restatement on Contracts, Section 324, says, 'insolvency of a promisor is not an anticipatory breach, and his bankruptcy does not have all the effect of such a breach * * *'. On the other hand, the United States Supreme Court has clearly taken a contrary position: 'bankruptcy of the obligor is an anticipatory breach of an executory contract and a claim for damages for the breach was provable under Section 63(a) of the Act of 1898'. Presumably the question is now to be considered as one for the applicable State law to answer. If under such law the inception of bankruptcy proceedings constitutes an anticipatory repudiation and thereby a breach of the contract, damages should, irrespective of local law, be computed as of the filing date, mainly on the familiar ground that the filing of the petition in bankruptcy represents generally the date as of which obligations and liabilities in bankruptcy will be determined."

The learned author cites many decisions in support of the rule followed by the Supreme Court of the United States.

Doubtlessly the suggestion of the learned author that the question is now to be considered as one to be answered by applicable State law was made because of the holding of the Supreme Court of the United States in Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487.

■ The law of Arkansas is in accord with the rule adopted by the Supreme Court of the United States. In Williams v. Maners, 179 Ark. 110, 14 S.W.2d 1104, 1107, the court said: "The proceedings in bankruptcy placed him [B. L. Williams] and appellant in a position where they could not carry out the contract relied upon."

■ The trustee in this case did not elect to assume the performance of the contract to convey the land to claimants, Clymer and Coutts. The contract of sale was breached when Robertson was adjudicated a bankrupt and the claim of Clymer and Coutts for damages at once became provable.

Subsection b of Section 70 of the Bankruptcy Act, Title 11, Section 110 of U.S. C.A., provides that within sixty days after the adjudication the trustee shall assume or reject any executory contract and that any such contract not assumed or rejected within such time whether or not a trustee has been appointed or has qualified shall be deemed to be rejected.

The remedy of the present claimants, Clymer and Coutts, became definite and clear upon the adjudication of Robertson as a bankrupt.

Section 63 of the Bankruptcy Act, U.S.C. A. Title 11, § 103, provides that debts of the bankrupt may be proved and allowed against his estate which are founded upon: "(8) contingent debts and contingent contractual liabilities; · or (9) claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property."

Subsection n of Section 57 of the Bankruptcy Act, U.S.C.A. Title 11, § 93, provides: "Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed."

■ The first meeting of the creditors in this case was held on December 13, 1940, and the claimants, Clymer and Coutts, on June 23, 1941, filed what might be construed to be a claim against the bankrupt. The paper filed by the claimants does not in any wise meet the requirements of the law as to the proof of a claim, but treating the paper which they did file on that date as a claim, the filing was too late and cannot be considered as a claim against the estate of the bankrupt.

The claimants, Clymer and Coutts, have done nothing to liquidate their claim. At

this time they are asking for specific performance of the contract and also undertaking to present a claim in the sum of $960 for the care and feed of the livestock which they were to deliver to the bankrupt under the terms of the contract, but they made no effort to comply with subsection d of Section 57 of the Bankruptcy Act.

In Collier on Bankruptcy, 14th Ed., Volume 3, page 327, it is said: "Hence under the present law the creditor of an unliquidated or contingent claim is subject to the same statutory limitation as a creditor of a liquidated or fixed claim. He must file his proof of claim within the prescribed period of six months after the first date set for the first meeting of creditors. At the same time or as soon thereafter as feasible he should petition for the directions of the court as to the manner of, and the time for liquidating his claim. The statute provides neither for the time within which such petition must be filed nor for the time within which such liquidation must be perfected. If the court finds that the appropriate way of liquidating the claim would involve an undue delay in the administration of the estate it will disallow the claim, in which case Section 63(d) provides that the claim is to be deemed a non-provable debt, thereby protecting the creditor against the bankrupt's discharge."

Subsequent to the adjudication and on February 18, 1941, the bankrupt filed an amended petition proposing an arrangement with his creditors under the provisions of Chapter 11 of the Bankruptcy Act, U.S.C.A. Title 11, §§ 701–799. After due notice and meeting of creditors the referee on March 20, 1941, by order approved the proposed arrangement. That order has become final.

The record does not disclose that claimants took any action to perfect their claim for damages as provided in Sections 351–355 of Chapter 11 of the Act, 11 U.S.C.A. §§ 751–755. In fact, they seem to have entirely disregarded all the proceedings until after the trustee had been authorized to convey the lands, covered by the contract, to the nominees of the bankrupt. That order was made May 5, 1941, and no claim or paper of any kind asserting or attempting to assert a claim for damages was filed until June 23, 1941, after the expiration of the time for filing and proving the claim under Section 63 and subdivision (n) of Section 57, and Sections 354 and 355 of the Bankruptcy Act, and not having been filed or proved as required by the law, the claim is now barred.

An order will be entered reversing the order of the referee and dismissing and expunging from the records the petition to cancel the executory contract and the response of the said W. H. Coutts, Jr., and R. A. Clymer filed on June 23, 1941.