CROW OIL & GAS COMPANY *v.* DRAIN.

Opinion delivered October 4, 1926.

1. ASSIGNMENTS—EVIDENCE.—In an action on defendant's accept-
ance of an order of a drilling company to pay to plaintiff $300
for each well drilled, it was not error to admit in evidence the
note and mortgage given by the drilling company to plaintiff,
as such testimony tended to prove that there was a considera-
tion for such acceptance.

2. ASSIGNMENTS—CONDITIONS.—Where defendant accepted an order
of a drilling company, obligating it to pay to plaintiff $300 upon
the drilling of each well for defendants, upon condition that the
money should be earned by the drilling company, defendant can-
not escape liability, in case the drilling company earned that
amount, because liens against the drilling company for labor and
materials had been enforced against all money in defendant's
hands belonging to the drilling company.

3. CORPORATIONS—CAPACITY TO CONTRACT.—Whether a corporation's
contract is *ultra vires* will not be considered on appeal, in absence
of evidence of its charter powers.

4. JUDGMENT—RES JUDICATA.—In a suit to recover $300 on an
accepted order, a former judgment for the same amount in a
suit between the plaintiff's assignor and the defendant will not
be *res judicata* where the pleadings in the former suit are not
set forth and it does not appear that plaintiff was a party
thereto, or that the same issues were involved or might have been
determined in that case.

5. JUDGMENT—RES JUDICATA—BURDEN OF PROOF.—The burden is on
the defendant to sustain his plea of *res judicata*.

6. APPEAL AND ERROR—PRESUMPTIONS.—The Supreme Court cannot
set aside a finding of the trial court on the issue of *res judicata*
by mere implications and intendments.

Appeal from Crawford Circuit Court; *James H.
Cochran,* Judge; affirmed.

*E. L. Matlock,* for appellant.

*Cravens & Cravens,* for appellee.

WOOD, J. This action was instituted by the appellee
against the appellant on the following instrument:

"Fort Smith, Ark., March 20, 1923.

"Crow Oil & Gas Company,
Fort Smith, Arkansas.

"Gentlemen: The Fort Smith Drilling Company is
indebted to Mrs. D. S. Drain in the sum of $3,500, evi-

denced by three notes, dated February 23, 1922, the first for $1,000, due in six months, the second for $1,000, due in twelve months, and the third for $1,500, due in eighteen months, all bearing interest from date at the rate of eight per cent. per annum, and you are hereby authorized and directed to pay to Cravens & Cravens, attorneys for Mrs. D. S. Drain, at the completion of each well drilled for you, the sum of three hundred dollars. ($300), until the full amount of these notes, together with interest, is paid.

"Yours truly,

"H. L. Thompson."

"We hereby accept the above order, and agree with Mrs. D. S. Drain to pay to her or her attorneys, upon the completion of each well for us by the Fort Smith Drilling Company, the sum of three hundred dollars ($300), in accordance with the above order, provided we do not bind ourselves to pay any amounts not earned by the Fort Smith Drilling Company under its present agreement or future agreements.

"Crow Oil & Gas Company."

The appellant denied liability. The cause, by consent of parties, was tried by the court sitting as a jury.

The appellee testified, and introduced in evidence the instrument set out above. She further introduced in evidence, over the objection of appellant, three notes dated February 23, 1922, in the aggregate sum of $3,500, purporting to have been executed by the Fort Smith Drilling Company to the appellee; also a mortgage of same date to secure these notes on certain oil well drilling machinery. The appellant also introduced in evidence certain correspondence between the appellant and Cravens & Cravens, attorneys for the appellee. One of the letters was dated February 12, 1923, in which the appellee stated that it was its intention to drill approximately a dozen wells in the Alma field during the following spring and summer; that it expected to give the majority of the work to the Fort Smith Drilling Company, and that it was willing to make the payments for complete wells as

directed by that company. Further correspondence shows that the Crow Oil & Gas Company paid to Cravens & Cravens the sum of $300 on the accepted order, and had failed to make any other payments upon demand of Cravens & Cravens. The correspondence concluded with a letter from Cravens & Cravens of November 16, 1923, notifying the appellant that they considered it liable on the order and its acceptance.

Ben Cravens testified, identifying the above correspondence. He identified and introduced in evidence a memorandum which reads as follows: "This check is to be given to Mrs. D. S. Drain, and is in accordance with a letter dated March 20, 1923, from H. L. Thompson, ordering the Crow Oil & Gas Company to pay to Mrs. D. S. Drain the above amount upon the completion of each well drilled by Mr. Thompson for this company." The witness further stated that this memorandum was attached to a check sent him by the appellant for $300. The appellee made further demand on the appellant for $300, which was refused. The witness did not know which wells the above correspondence referred to, but stated that he received $300 for the drilling of the first well. Witness did not know whether the drilling company had completed any well.

Witness C. R. Jones testified for the appellant that he was its secretary and treasurer at the time the transactions mentioned were had with the Fort Smith Drilling Company. At the time the order in controversy was accepted by the appellant, the Fort Smith Drilling Company was drilling or preparing to drill for the appellant. The drilling company had a contract to drill three wells. It completed the Boren well, and Mrs. Drain was paid $300. The drilling company did not complete the Wood well, and no money was paid Mrs. Drain because that well was lost. The Byars well was not completed, but the appellant would have paid for it if it had been permitted to do so by the chancery court. A suit was filed by various parties against the drilling company and the appellant, claiming liens on the Byars well, and the

appellant paid the amount earned by the drilling. company, to-wit, $4,555.85, into the chancery court in that suit. The appellant finished the well. The appellant had orders from the drilling company for four or five times as much money as was coming to it. It accepted these orders conditionally just the same as the Drain orders. Suit was brought by Pugh and others against the drilling company and others before the Byars well was completed and was shut down. by. attachment, and the parties bringing that suit afterwards received their money under the order of the chancery court. The appellant received no benefit from the giving of the order by the drilling company to the appellee and its conditional acceptance by the appellant. There was no resolution of the board of directors authorizing the witness to accept the order. The conditional acceptance was just an effort to help persons with whom appellant had dealings in a business matter between themselves. The appellant paid into court, in the case mentioned, all the money due the drilling company on the Byars well. The witness did not know that the drilling company was indebted to the appellee until the order was brought to witness. Thompson told the witness that Mrs. D. S. Drain was pressing the drilling company for payment. If Mrs. Drain had taken possession of the outfit, the drilling company could not have drilled the wells. The appellant could have got fifty other contractors to drill the wells, but wanted to help the drilling company. The appellant advanced to the drilling company $1,000 before it did anything, and it advanced it in all the sum of $2,200 between June 14 and November 28, 1923, inclusive. This amount, with the amount paid into court, made the sum of $6,738 due the drilling company for footage. The appellant paid the City National Bank the sum of $500 as an accommodation to the drilling company. Witness did not know whether this was for material used in drilling the well or not. Witness would have paid Mrs. Drain out of the $4,555.85 due on the Byars well, but was prevented by the suit of laborers and materialmen

for prior liens.    The order of the drilling. company accepted by the appellant was given before the drilling company had any contract to drill for the appellant. The materials paid for by the appellant were added to the drilling company's rig used in drilling the Byars well, on which machinery Mrs. Drain had a mortgage.    The appellant put in evidence a certified copy of a decree of the Crawford Chancery Court, which decree recites as follows:

"On this day this cause comes on to be heard, the plaintiffs appearing in person and by their respective attorneys, the defendant, Fort Smith Drilling Company, appearing by its attorneys, Warner, Hardin & Warner, the defendants, Industrial Oil & Gas Company and Crow Oil & Gas Company, appearing by their attorney, E. L. Matlock, and the issues are presented to the court at chambers by consent of all the parties, it being agreed that the findings and orders of the court may be on this day made with the same effect as if heard at Van Buren in term time, and that said order may this day be entered with that force and effect.

"The court finds, the parties consenting thereto, that the defendant Crow Oil & Gas Company is indebted to the defendant Fort Smith Drilling Company upon a contract for the drilling of a well known as the Byars No. 3 in the sum of $4,555.85, which sum said Crow Oil & Gas Company tenders into court. And the court finds, all parties consenting thereto, that the defendant, Fort Smith Drilling Company, is indebted to the following persons in the sum set opposite their names, respectively, to-wit:    (Here follow certain names and amounts due certain parties for labor and material furnished).

"And the court further finds, all the parties hereto consenting thereto, that the said Fort Smith Drilling Company is indebted to the following named persons in the amounts set opposite their respective names: (Among the list of names here following appears that of D. S. Drain with the amount of $300 opposite).

"It is therefore by the court considered, ordered and adjudged and decreed that each of said persons above mentioned do have and recover of and from the Fort Smith Drilling Company, defendant herein, the amount herein above found to be due them, respectively.

"It is further ordered that the said sum of $4,555.85 tendered into court by the defendant, Crow Oil & Gas Company, be paid by said company into the treasury of the court and to W. A. Bushmaier, clerk of said court. It is further ordered that the persons referred to as having liens for labor done hereinabove be and they are hereby declared to have first or prior liens paramount and superior to all other liens of persons on the fund so paid into court, and it is ordered that said clerk pay first to such persons said amounts respectively, and accept their receipts therefor, and that said receipts be filed with the papers in the case."

The decree further ordered that the clerk pay out of the sum of $4,555.85 in his hands, first, the parties who had been adjudged liens for labor and materials furnished; and that the remainder be held in his hands to await further orders of the court.

Ben Cravens was recalled, and testified that, at the time the order in controversy was given and accepted, his firm had the notes given by the drilling company to the appellee for collection, and the appellee had been threatening to foreclose the mortgage given by the drilling company to secure the same.

Upon the above facts, the court rendered judgment in favor of the appellee in the sum of $300, with interest at the rate of six per cent. from Nov. 1, 1923, from which judgment is this appeal.

1. The court did not err in permitting the appellee, over the objection of appellant, to introduce in evidence the notes and mortgage given by the Fort Smith Drilling Company to the appellee. This testimony was relevant. The appellant had made itself a party to the order which is the foundation of this action by accepting the same.

The notes and mortgage tended to prove the transaction between the drilling company and the appellee upon which the order was based, and the consideration moving from the appellee to the drilling company for such order. This testimony was likewise relevant to the issue raised by the appellant in its answer, to the effect that the appellant received no benefit from the giving of the order, and the acceptance thereof was without any consideration moving from either of the parties to the appellant, and purely for the accommodation of the appellee and the drilling company.

The appellant's secretary testified, among other things, that the representative of the drilling company told him that the appellee was pressing the drilling company for payment, and that if the appellee had taken possession of the outfit of the drilling company it could not have drilled the wells. One of the attorneys for the appellee testified that his firm had been threatening to foreclose the mortgage on the machinery of the drilling company. The secretary of the appellant further testified that, at the time the order was given, the appellant had a contract with the drilling company to drill three wells.

It occurs to us that the introduction of the notes and mortgages was pertinent to the issues raised by the pleadings and the testimony of appellant's secretary. This testimony tended to prove that the appellant did not accept the order purely for accommodation, but that there was a consideration moving from the drilling company and the appellee to the appellant for the order and its acceptance. The court had a right to conclude from this testimony that the appellant accepted the order for the reason that it was interested in having the drilling company perform its contract in the drilling of the wells, which the testimony of appellant's own secretary shows could not have been done if the machinery of the drilling company had been taken over by the appellee under its mortgage.

2. The contention of learned counsel for appellant that the acceptance of the order by the appellant was conditional, and that the condition upon which the order was accepted had failed or had not arisen, cannot be sustained. The only condition in the order and acceptance was that the money should be paid by the appellant when the same was earned by the drilling company in the drilling of the wells for the appellant. The testimony of appellant's secretary shows that the drilling company had complied with this condition by the drilling of a well, on which there was due the drilling company by the appellant, at the time this action was instituted, the sum of $4,555.85. True the appellant secretary stated that the well at that time had not been completed, but that the appellant did not object to the payment on that ground, and would have paid the amount to the appellee under its acceptance "if it had been permitted to do so by the chancery court." The undisputed testimony of appellant's secretary proves that, as between the appellant and the drilling company, the latter had earned, by the drilling of wells for the appellant, far more than was called for by the acceptance, and that the appellant, at the time the $300 in controversy was demanded, had waived the noncompletion of the well by the drilling company. It thus appears that the appellant would have paid the appellee the $300 in controversy under its acceptance had it not been directed by order of the chancery court to pay into the registry of that court the sum which had been earned by the drilling company in the drilling of the second or Byars well for the appellant. Counsel for appellant contends that, although the drilling company had drilled the wells and earned thereby the sum of $4,555.85, nevertheless the condition specified in the order and acceptance had not been met, for the reason that the drilling company had not paid those who had furnished labor and material for the drilling of the wells; that the drilling company had not earned the amount called for by the acceptance of the order until these claims, which were prior liens, had been paid and

discharged. We cannot agree with counsel upon this construction of the acceptance of the order. The drilling company which had the contract with the appellant for the drilling of the wells had complied with the condition of the acceptance on its part by drilling a well, and had earned, as the appellant's secretary concedes, the money as between it and the appellant. The fact that suit had been brought by laborers and materialmen against the appellant and the drilling company for labor and materials furnished, cannot avail the appellant as a defense in appellee's action against it, for the reason that the payment of these claims by the drilling company was not made a condition to the acceptance of the order in controversy by the appellant. So far as the appellant and the drilling company and the appellee are concerned, the only condition of the acceptance was that the money should be earned by the drilling company, which the undisputed testimony proves was the fact.

In the recent case of *Oliver Construction Co.* v. *Union Trust Co., ante,* p. 482, we said: "The undisputed evidence shows that the sum due Stebbins from appellant under his contract with it amounted to more than the face of the order on October 12, 1923, unless appellant had the right to deduct the amount it had paid the laborers employed by Stebbins before paying anything on the order and acceptance. The language of the order and acceptance is unambiguous, and means that appellant will pay appellee the sum of $1,000 out of the estimate to be. rendered on October 12, 1923, if it should amount to that much or more. The order and acceptance did not provide for payment out of any balance which might be due Stebbins on that date, but for payment out of the estimate which would be due on that date. There being no ambiguity in the order and acceptance, which imported absolute liability upon the sole contingency of the estimate being sufficient to cover the order, the court properly excluded the testimony of Oliver tending to contradict the written contract."

The above case is applicable to the facts here, because, under the terms of the order and the acceptance thereof, the payment of the amounts due by the drilling company to the laborers and material furnishers was not made a condition upon which the order was accepted. Therefore we conclude that the only condition or requirement specified in the order and the acceptance thereof upon which payment to the appellee was to be made, had been fully met and complied with.

3. The contention that the signing of the acceptance by the appellant, through its secretary, was an *ultra vires* act, cannot be sustained, for the reason that there is no testimony in the record to show that the execution of such an acceptance was beyond the charter powers of the appellant. The appellant's charter was not in evidence, and, as we have already shown, the trial court was warranted in holding that the acceptance of this order was for the benefit of the appellant, and that it enabled the drilling company, with whom the appellant had the contract to drill wells, to proceed in the performance of that contract, and, for aught the record shows to the contrary, this was an act pursuant to the appellant's charter powers.

4. The proceedings of the Crawford Chancery Court in evidence in this record do not prove that the decree of the court in that action was *res judicata* of the present action, as contended by counsel for appellant. The recitals of that decree only show that D. S. Drain had a claim allowed in that action in the sum of $300 against the drilling company. The pleadings in that case are not set forth, and it cannot be determined from the mere recitals of the decree that the same issues were involved, or might have been determined in that case, between the appellant and the appellee, as were raised and determined between them in the present action. The recitals of the decree of the Crawford Chancery Court in evidence here do not show that the appellee intervened in that cause

and asked judgment against the drilling company. The only recital as affecting the appellee is as follows: "All the parties hereto consenting thereto, that the said Fort Smith Drilling Company is indebted to the following persons in the amounts set opposite their respective names. (Here, among others, naming D. S. Drain and setting opposite the name the sum of $300). "It is therefore by the court considered, ordered, adjudged and decreed that each of said persons above mentioned do have and recover of and from the Fort Smith Drilling Company, defendant herein, the amounts herein above found to be due them, respectively."

In the absence of the pleading filed by the appellee in that cause, it cannot be said that the trial court erred in finding that the proceedings of the chancery court were not *res judicata* of appellee's present action. For it cannot be said that the mere recitals of the decree prove that the appellee did ask, or could have properly asked, for judgment against the appellant in that action. The recitals are sufficient to show that D. S. Drain presented, and was allowed, a claim against the drilling company in the sum of $300, but that is far from proving that Mrs. D. S. Drain, the appellee, filed in that suit a claim for $300 against the appellant, or that she, under the pleadings in that case, could have presented a claim against the appellant for the amount which she here seeks to recover. The appellee has proved her claim and right to recover against the appellant in the present action. The burden of proof was upon the appellant to sustain its plea of *res judicata*. In the absence of any showing in the record to the contrary, every presumption must be indulged in favor of the findings of the trial court. On the issue of *res judicata* raised by the appellant, we do not find any testimony in the bill of exceptions except the recitals of the decree of the Crawford Chancery Court, as above set forth, and these recitals are not sufficient to overturn the finding of the trial court on that issue. This court cannot set aside the finding of the trial court on the

issue of *res judicata* by mere implication and intendments. The record wholly fails, as we view it, to sustain the appellant's plea of *res judicata*.

The judgment of the trial court is therefore correct, and it is affirmed.