WILLIAMS *v.* MANERS.

Opinion delivered March 4, 1929.

*J. E. Ray*, for appellant.

*M. F. Elms*, for appellee, Maners; *John L. Ingram*, *pro se.*

HUMPHREYS, J.   B. L. Williams, husband of appellant, Ida R. Williams, owned certain real estate in the city of Stuttgart, and sold same, on the 3d day of February, 1920, to R. L. Metsker, and received seven one-thousand-dollar promissory notes and a first mortgage back on said property for the purchase price thereof.   The first note became due and payable on October 1, 1921, and one each year thereafter until all became due.   The notes bore interest at the rate of 8 per cent. per annum from date.

On the 21st day of April, 1920, B. L. Williams and his wife borrowed from and executed their joint note for $3,000 to W. H. Maners, one of the appellees herein, bearing interest at the rate of 8 per cent. per annum until paid, and with the indorsement on the note that it would bear 10 per cent. after maturity; and said sum was secured by the transfer of four of the seven promissory notes and mortgage executed by W. H. Maners to B. L. Williams.   R. L. Metsker afterwards conveyed the property to Jennie Ferch, a nonresident of the State, both of whom failed to pay the taxes, and defaulted in the payment of the first note and interest on the others.

On April 20, 1922, B. L. Williams brought this suit to foreclose on the notes and the interest due to that date, subject to the notes not due, in which suit W. H. Maners intervened, alleging the assignment of four of the notes to him as collateral security, and praying that the proceeds to be derived from the foreclosure sale should first

be applied to the payment of the indebtedness which appellant and her husband owed him.

A receiver was appointed to rent the property and pay all delinquent taxes. He collected the rents, and redeemed the property from all tax sales except the special improvement taxes levied against the property by the Northern Road Improvement District, which he overlooked. The mortgagor, R. L. Metsker, not only failed to pay these taxes to protect the title to the property, but the mortgagee, B. L. Williams, had neglected to pay them in order to protect his lien. The lands were sold through proceedings in the chancery court for these taxes, amounting to $28.02, and were bought in by said district on the 23d day of August, 1922. The district sold and transferred its certificate of purchase to E. H. Noble, who presented it to the commissioner in chancery two years after the sale, and obtained a tax deed to the property. W. H. Maners, in looking through the record, discovered the outstanding tax title in Noble, and he and the Williamses tried to get a quitclaim deed from him, but failed to do so. They then brought suit in the chancery court against Noble, and obtained a decree canceling his tax title, but, in order to prevent an appeal to the Supreme Court, the Williamses and Maners purchased Noble's tax title, agreeing to pay him $500 for it. Noble owed the Williamses $100, and Maners loaned them the other $400 in order to purchase the outstanding tax title. The Williamses executed to him two notes, one for $100, which was paid in a few months, and the other for $300, payable at a later date. By agreement the property was conveyed by Noble to appellant, at which time a written agreement was entered into between the Williamses and Maners whereby W. H. Maners acknowledged that appellant was the owner of the property and the Williamses acknowledged their indebtedness to him on the original $2,000 note, as well as the $300 note given for borrowed money to pay Noble for his tax deed, and turned the possession of the property over to him, to the end that he might rent same, pay the taxes and insurance and

apply the balance to the liquidation of said indebtedness. Pursuant to the agreement, W. H. Maners took possession and rented the property, and credited the notes with $88 on January 2, 1927, and with $125 on August 2, 1927. After the execution of the contract, B. L. Williams became insolvent, and was adjudicated a bankrupt. Noble was appointed trustee in the bankrupt proceedings. W. H. Maners then filed an amended intervention in the foreclosure proceedings, setting out the facts detailed above, and making appellant and the trustee of B. L. Williams parties in the action, praying judgment for the amount due him, and that his indebtedness be declared a prior and paramount lien against the property. The cause was revived in the name of the trustee of B. L. Williams, without objection on the part of appellant.

Appellant filed an answer to the amended intervention, denying liability for the alleged balance of $1,993.22 on the $2,000 note executed by her husband and herself to W. H. Maners, alleging that she received no part of the borrowed money; also denying liability to the extent of $112.26 on the $300 note executed by herself and husband to Maners, or that such amount as she might owe thereon was or is a lien on the property; also denying that the purchase of the tax title from E. H. Noble amounted to a redemption of the property from the tax forfeiture and sale; and, by way of affirmative defense, alleged that she acquired the fee simple title to the property under her purchase and conveyance from E. H. Noble, clear of all claims and incumbrances of W. H. Maners and other parties to the suit.

The cause was submitted to the court upon the pleadings, exhibits thereto and the deposition of W. H. Maners, which resulted in a finding that the purchase of the tax title from E. H. Noble by appellant amounted to a redemption of the property from the tax forfeiture and sale for the benefit of W. H. Maners and the creditors of B. L. Williams, represented in the suit by his trustee in the bankrupt proceedings, and that W. H. Maners and the trustee were entitled to a decree of foreclosure of the

property, and out of the proceeds of the sale W. H. Maners was entitled to the amount due him, of $2,018.01, with interest from date of the finding, and that the trustee was entitled to $8,039,99, and that the balance, if any, should be held subject to the further order of the court. A decree was rendered in accordance with the findings, and the property was sold, and a commissioner's deed was executed to the purchaser and approved and confirmed by the court, from which findings and decree is this appeal.

Appellant's first contention for a reversal of the decree is that the court had lost jurisdiction over the cause of action by reason of the rendition of a decree in the cause on the 8th day of October, 1924. Cases are cited to the effect that the court loses jurisdiction over a cause of action and a final decree therein after the lapse of the term at which same is rendered. The principle invoked is not applicable in the instant case. Appellant did not plead *res judicata* as a defense, nor raise that question in the lower court. She has raised it here for the first time, basing her contention on the following notation appearing at page 68 of the transcript: "Decree rendered on October 8, 1924." The record is silent as to the contents of the decree, or by whom or on what authority it was made. The notation is too indefinite to sustain the defense of *res judicata,* had it been pleaded.

Appellant also contends for a reversal of the decree on the ground that no duty rested upon B. L. Williams or appellant to pay the taxes, and that therefore the court erred in treating the purchase of the tax title by her from E. H. Noble as a redemption from the tax sale. It is argued that the only duty to pay taxes on the property rested upon the owner and mortgagor or his grantees. Cases are cited to the effect that such duty did rest upon them, but the cases do not go to the extent of holding that their duty in this respect was exclusive. The rule was announced by this court in the case of *Ross* v. *Frick,* 73 Ark. 45, 83 S. W. 343 (quoting syllabus): "While the mortgagee may pay the taxes on mortgaged land and

claim reimbursement therefor, he may not permit the land to be sold for taxes and acquire title under the sale.'' This court also ruled in the case of *Herrin* v. *Henry,* 75 Ark. 273, 87 S. W. 430, that: ''Where a duty rested upon a husband to pay taxes upon property, the purchase by his wife at the tax sale should be treated as his purchase and regarded as a redemption for the benefit of his creditors.'' This court ruled in the recent case of *Adams* v. *Simms,* 177 Ark. 652, 9 S. W. (2d) 327, that, where wives of mortgagors purchased titles to their homesteads, under a sale thereof to satisfy road improvement taxes, with their individual money, such purchase by the wives would be treated, so far as the mortgages were concerned, as a redemption of the land by the mortgagors. In principle the purchase of tax titles by wives of mortgagees would not be different from the wives of mortgagors. In the instant case the money with which the outstanding tax title was purchased was borrowed by appellant and her husband from W. H. Maners, and he was placed in possession by them, with direction to collect the rents and apply same to the payment of the money thus borrowed, as well as the balance of the indebtedness which they owed him on the $2,000 note for borrowed money. It would be inequitable indeed to let appellant set up her tax title in defense of his claim.

Appellant also contends for a reversal of the decree because the $2,000 note signed by her and her husband jointly to W. H. Maners for borrowed money had upon it the following indorsement: ''I, the undersigned, agree to pay 10 per cent. after maturity.'' It is argued that this indorsement was placed on the note by B. L. Williams after its execution and maturity, without her consent, and invalidated the note as against her on account of an alteration and on account of its being an extension of the time for payment thereof. There is no testimony that this indorsement was placed upon the note after its execution. So far as the record discloses, appellant was a principal, and not a surety. It is true that she alleged that she received no consideration for signing

the note, and signed it as surety for her husband, but she did not introduce any proof to this effect. She did not allege an alteration in the note or an extension thereof without her consent, and had raised both these questions for the first time in this court.

Appellant also contends for a reversal of the decree on the ground that, under the contract, W. H. Maners' only remedy was to remain in possession of the property and collect his indebtedness out of the rents. There may have been something in this contention if B. L. Williams had not become insolvent and a bankrupt. The proceedings in bankruptcy placed him and appellant in a position where they could not carry out the contract relied upon. Without objection, his trustee was made a party in the foreclosure proceeding, and the cause was revived in his name. The trustee had the right to subject B. L. Williams' equity in the property to the payment of the indebtedness due his creditors, after paying existing liens or incumbrances upon the property. W. H. Maners' only remedy to collect his indebtedness was to enforce his rights in the mortgage foreclosure proceedings, which had never been dismissed.

No error appearing, the decree is affirmed.