HOT SPRINGS GOLF & COUNTRY CLUB ASSOCIATION *v.* COMMUNITY BANK & TRUST COMPANY.

Opinion delivered November 17, 1930.

*Geo. P. Whittington,* for appellant.

*C. T. Cotham, S. W. Garratt* and *C. Floyd Huff,* for appellees.

MEHAFFY, J. The Southwestern Marble & Tile Company brought suit in the Garland Chancery Court against appellants, Robert Higgins and Hot Springs Golf & Country Club Association, and against appellees, A. W. Griffee, C. J. Horner and Community Bank & Trust Company. It alleged that the Hot Springs Golf & Country Club Association was the owner of certain real property situated in Garland County, Arkansas, and that it had entered into a contract with appellant, Robert Higgins, for the erection of a building on said lands, and Higgins sublet a part of said contract to appellee, Griffee.

That Griffee purchased certain materials from the Southwestern Marble & Tile Company in the sum of $1,432.67, which materials went into said improvement, and it claimed a lien on the lands on which the building was erected. It also alleged that Horner and the Community Bank & Trust Company claimed an interest in the property. It had previously filed a mechanic's lien in proper form and in the time prescribed by law for the sum sued for. It asked judgment against Griffee, and that the same be declared a lien upon the real property described in the complaint. The Community Bank & Trust Company filed answer admitting the contract between the Hot Springs Golf & Country Club Association and Higgins for the erection of the building and the subletting of part of the contract to Griffee. This answer also alleged that it had no knowledge in reference to the claim of the Southwestern Marble & Tile Company and denied that it had any claim. The Community Bank & Trust Company made its answer a cross-complaint alleging that on July 11, 1928, it at the instance and request of Griffee, and in pursuance to the agreement of Higgins, agreed to advance to Griffee certain sums of money for the purpose of paying for labor and materials on the subcontract which Griffee had with Higgins, and with the provision that the payments of estimates due Griffee by Higgins should be paid to Community Bank & Trust Company, and provided that in no case should any advances be made in excess of the contract price $5,500, the amount which Higgins had agreed to pay Griffee. That Higgins was the general contractor, accepted the agreement and agreed to pay the amounts as they became due to the Community Bank & Trust Company. The agreement between Higgins and Griffee as to the bank advancing money, was as follows:

"July 11, 1928.

"Mr. Robert Higgins, General Contractor,

"Hot Springs Golf and Country Club, City.

"Dear Sir: The Community Bank & Trust Company is advancing me money for labor and material on

the Hot Springs Golf and Country Club job and request that you make all payments direct to them as estimates become due, in no case to exceed the amount of the contract: fifty-five hundred dollars ($5,500).

"Yours very truly,

"A. W. Griffee.

"I accept the above agreement and will pay the amounts as they become due direct to the Community Bank & Trust Company.

"R. T. Higgins."

The Community Bank & Trust Company alleged that it loaned Griffee, on the security of its agreement and the acceptance thereof by Higgins, sums aggregating $1,675 evidenced by three promissory notes executed by Griffee to it, and that the money was loaned for the purpose of paying for labor and material; that it went into the work Griffee was performing for Higgins. That, while the bank did not enter into any agreement with Griffee and Higgins to do so, it acted with their consent and approval and honored checks and paid for material alleged to have been used in the building in the amount of $2,928.98, and for labor $2,849.93. It alleged that Higgins executed and delivered to it on October 27, 1928. his check for $2,456.75 drawn on the Arkansas National Bank of Hot Springs with the notation on the check, "Paid in full Country Club Job for A. W. Griffee, contract." That at the time said check was delivered to it Griffee was indebted to it in the sum of $1,675 principal on said notes executed by Griffee for the purpose of securing money to pay for the labor and materials which went into the building and interest on said notes of $15.16, aggregating $1,690. That no part of this sum had been paid. That the bank had agreed to apply the balance of the proceeds of said check after paving these notes, upon bills which had been presented to it and had been approved by Griffee and Higgins. It accepted the check, and the bank refused to pay same, and it was returned to Community Bank & Trust Company. It asked judgment against Higgins and Griffee for $2,456.75 with

interest and that upon the payment of the check it would be authorized and directed to first pay the sum due it on said notes with interest, and that the balance be applied under the order and direction of the court. Copies of the notes and check were attached to the complaint as exhibits, also a list of checks drawn by Griffee which purported to be payments for material and labor. The total amount paid out by the bank being $5,778.91.

C. J. Horner filed answer alleging that he had furnished materials for Griffee to go into the Country Club job; had filed his mechanic's lien against the property of the Hot Springs Golf & Country Club Association and asked for judgment and a lien for $251.90.

A. W. Griffee did not answer.

Peyton Bondurant filed intervention alleging that he furnished materials to Griffee which went into the Country Club job and claimed a mechanic's lien and judgment for $223.97.

Robert Higgins filed answer denying that at the request of Griffee the Community Bank & Trust Company agreed to advance to either Griffee or him sums of money for the purpose of paying for labor and materials. He admitted that Griffee executed the instrument, and that he signed the memorandum at the bottom, but stated that he at no time entered into any agreement with the Community Bank & Trust Company other than that contained in his acceptance of the order directed to him and signed by Griffee; denied that money was paid by the bank to Griffee with his consent and approval. He alleged that the agreement entered into between himself and Griffee formed a part of and was subject to the agreement and specifications for the erection of the building. Higgins also alleged that on October 27 Griffee delivered to him receipts showing payment of $1,432.67 to the Southwestern Marble & Tile Company the sum of $472.21 to Horner, which receipts purported to be in full payment of all materials furnished to Griffee and used in the erection of the building. That Griffee also exhibited to him a receipt from Peyton Bondurant,

and that the Southwestern Marble & Tile Company, Horner and Bondurant were claiming liens on the building and premises and claiming they had never been paid, and alleged that, if the liens were established, Higgins would be compelled to pay and discharge them as a liability against Griffee, and that, if the liability on the liens was established, it should be discharged out of the sums due on his contract as a part of the consideration for the performance thereof. He admitted that, at the time his check was delivered, Griffee was indebted to the Community Bank & Trust Company $1,675 and interest, but denied that he entered into any agreement with the bank to apply any sum of money represented by said check upon the bills. He admitted that he stopped payment of the check because the sum of money was not due Griffee, and was not payable to the Community Bank & Trust Company. He alleged that, if the claims of the Southwestern Marble & Tile Company, Higgins and Bondurant were established as liens, he would be compelled to pay them, and that he was entitled to deduct any sum which he might be compelled to pay from the amount due said Griffee and payable to the Community Bank & Trust Company under his acceptance of the order, and that he was willing to pay the sum of $2,456.75 to such person or persons as the court might determine were entitled to the same.

Higgins and the Hot Springs Golf & Country Club Association answered complaint of the Southwestern Marble & Tile Company, admitting the ownership of the lands owned by the Country Club Association, admitting the contract for the erection of the building and that Higgins sublet part of the contract to Griffee. They admitted that Griffee purchased materials from Southwestern Marble & Tile Company which were used in the construction of the building, but had no information as to the amount, and denied that they were liable for the payment thereof, and denied that the Southwestern Marble & Tile Company were entitled to a lien on the building; denied that Horner and the bank had any

claim upon the property. They then alleged that Griffee was to install the marble and slate work for $5,500, and that Griffee did install and furnish the material and that on October 27, 1928, there was a balance due Griffee on the contract of $2,189, and that the Southwestern Marble & Tile Company claimed it was entitled to receive $1,432.67, and that on October 26, the Southwestern Marble & Tile Company executed its receipt acknowledging payment in full, and that, acting upon the faith of said receipt, Higgins delivered to the Community Bank & Trust Company his check for $2,456.75 in full payment of the sum due Griffee under the contract. The receipt of the Southwestern Marble & Tile Company was attached as an exhibit and was signed by A. N. McAninch. That Higgins would not have issued said check to the bank for the use and benefit of Griffee if the receipt of the Southwestern Marble & Tile Company had not been exhibited and delivered to Higgins. Higgins and the Hot Springs Golf & Country Club Association filed their answer to the cross-complaint of Horner, denying the allegations in Horner's cross-complaint. About the same allegation was made with reference to receipt by Horner and allegation that the Southwestern Marble & Tile Company and Horner were estopped by giving the receipts.

The court rendered judgment in favor of the Southwestern Marble & Tile Company against the estate of A. W. Griffee and Robert Higgins and the Hot Springs Golf & Country Club Association for the sum of $1,432.67, with interest from October 27, 1928, at 6 per cent. per annum and costs, and in favor of C. J. Horner against the same parties for the sum of $251.90, with interest from October 27, 1928, at 6 per cent. per annum and costs, and in favor of the Community Bank & Trust Company against the estate of A. W. Griffee and Robert Higgins for the sum of $1,903.32, with interest at 8 per cent. per annum from date of judgment and costs. Judgment was also rendered in favor of Peyton Bondurant against the estate of A. W. Griffee, Robert Higgins and

Hot Springs Golf & Country Club Association for $223.97, with interest from October 27, 1928, at 6 per cent. per annum and costs. The judgments of the Southwestern Marble & Tile Company, C. J. Horner and Peyton Bondurant were declared liens upon the property of the Hot Springs Golf & Country Club Association and provided for sale of property. While appellants call attention to the receipts given by the Southwestern Marble & Tile Company, Bondurant and Horner, and say that Higgins relied on these receipts, they close their brief with the statement that the court should have found that the claims of Southwestern Marble & Tile Company, Horner and Bondurant should be paid. The undisputed evidence shows that these parties furnished the materials, and that said materials actually went into the building. Neither Higgins nor the Hot Springs Golf & Country Club Association was in any way prejudiced by the receipts. Neither of them relied on the receipts nor changed their position in any way. Higgins was present when receipts were given and knew that they were given for a check and knew their claims had not been paid. He knew all the facts.

We said recently: "It is true that one by his conduct or statement may be estopped from asserting rights which might otherwise have existed, but, before he will be estopped, it must be shown that another has in good faith relied on such conduct or statements, and has been thereby led to change his position for the worse." *Norton v. Maryland Casualty Co., ante* p. 609. However, appellants do not insist that the judgments in favor of these parties were not proper. It is conceded by Southwestern Marble & Tile Company and Bondurant that there should be no personal judgment in their favor against Robert Higgins and Hot Springs Golf & Country Club Association. The appellants do not argue the question. However, since appellees request that the said personal judgment in favor of these parties against Higgins and Hot Springs Golf & Country Club Association is an error, the judgment is accordingly modified as requested. Appellants

insist that the judgment in favor of the Community Bank & Trust Company against the estate of A. W. Griffee and Robert Higgins should be reversed.

The contract as to the furnishing of money is set out above. Higgins as well as Griffee was interested in this matter. The bank furnished the money sued for and did it on the faith of the letter written by Griffee to Higgins, and there is nothing to indicate that the bank was to look after the distribution of the money, but the agreement was to advance money to Griffee to pay for labor and materials. There was no suggestion that the bank was to see that the money so advanced was properly applied. Higgins accepted this agreement as it was written without suggesting any modification or change, and he of course knew that the money under this agreement would be paid by the bank direct to Griffee. It is undisputed that the bank furnished the money.

The questions here are similar to the questions in the case of *Oliver Construction Co.* v. *Union Trust Co.,* 171 Ark. 482, 284 S. W. 779, and *Crow Oil & Gas Co.* v. *Drain,* 171 Ark. 817, 286 S. W. 971.

The modification as to personal judgment above mentioned is made as requested by appellee, and the decree is in all other things affirmed.