CENTRAL STATES LIFE INSURANCE COMPANY *v.* SIMMONS.

4-4654

Opinion delivered June 7, 1937.

*Buzbee, Harrison, Buzbee & Wright, A. D. Du-Laney* and *Charles Jacobson,* for appellant.

*A. G. Meehan* and *John W. Moncrief,* for appellee.

SMITH, J. Appellee prayed and was granted relief by way of a decree directing the specific performance of a contract to convey to him two farms in Arkansas county, and this appeal is from that decree.

Appellee had purchased the farms from different owners, and both were encumbered by a mortgage. He was a customer of the Bank of Gillett, to which institution he had become largely indebted. Portions of the paper evidencing this indebtedness were indorsed and delivered to the American Bank of Commerce & Trust Company as collateral by the Bank of Gillett. To assist in the collection of this collateral the American Bank of Commerce & Trust Company began making advances to appellee to enable him to cultivate and market his rice crops, and this practice was continued by the American Southern Trust Company, which succeeded the American Bank of Commerce & Trust Company. Foreclosure decrees of the liens upon the lands were rendered, pursuant to which both farms were sold and conveyed to W. A. Hicks, trustee, by the commissioner appointed for the purpose of making the sales. The deed under the first decree was executed November 27, 1922, and the consideration for this deed was $5,076.67. The second commissioner's deed to Hicks as trustee was executed March 10, 1925, and the consideration therefor was $14,373. It was not recited in either deed for whom or for what purpose Hicks was trustee.

The testimony establishes the fact that it was agreed between appellee and Hicks, as the representative of the American Bank of Commerce & Trust Company, that appellee should have the right to purchase both farms for the prices paid by the bank, with taxes and other carrying charges added. It was contemplated that such payments would be made out of the proceeds of the sale of appellee's rice crops, but the balance then due by appellee to the bank and the current advances were first to be paid.

On September 3, 1925, Hicks, as trustee, conveyed both farms to the Home Realty Corporation, which appears to have been organized to take over numerous

tracts of land to which the bank had acquired title. Hicks was in fact trustee for the bank. On September 1, 1926, the Home Realty Corporation executed a deed of trust to the American Southern Trust Company to secure an issue of bonds in the sum of $500,000. The lands here in question were included in this deed of trust.

These bonds were sold to various persons and corporations, and $100,000 of them were redeemed and canceled. The Home Life Insurance Company became the holder and owner of $360,000 of the bonds, and the title to and the ownership thereof passed to the Central States Life Insurance Company when that company absorbed and succeeded the Home Life Insurance Company. Much of the history leading to this result is recorded in the opinions in the cases of *American Southern Trust Co.* v. *McKee,* 173 Ark. 147, 293 S. W. 50, and *Central States Life Ins. Co.* v. *State,* 190 Ark. 605, 80 S. W. (2d) 628.

The Home Realty Corporation was adjudged a bankrupt, and S. M. Dent was named as trustee in bankruptcy. In a proceeding before the referee in bankruptcy it was found and adjudged that $400,000 of the $500,000 bond issue was outstanding and unpaid, and that the Central States Life Insurance Company was then the owner and had in its possession $335,000 of the unpaid bonds. The ownership of the remainder was also declared. The referee further found that "The value of the security held by the trustee in said deed of trust for the benefit of said bondholders was and is $287,000." The Home Realty Corporation had given its check for $457,323.22 to the American Southern Trust Company in payment of the lands, and those here involved were valued in the deed to it at the sum of $19,000.65. It was ordered by the referee in bankruptcy that the trustee in bankruptcy convey all the lands to Burk Mann as trustee for the bondholders, and such deed was executed November 24, 1931. Mann as trustee was made a party, and he alleged in his answer how and for what purpose he had acquired title. The answer of the Central States Life Insurance Company alleges conveyances to it from Mann as trustee and from the trustees and owners of the bonds not held and owned

by the Central States Life Insurance Company, so that it is now the real party in interest adverse to appellee.

It was alleged in the various answers that Mann as trustee had acquired the title as an innocent purchaser; but this was denied by appellee, for the alleged reason that he was and had been in possession of the lands at all times under his contract with Hicks as trustee for the repurchase of the lands. Much of the testimony in the voluminous record before us relates to this possession; but we do not review and recite it here for the reason that the case will be disposed of upon another issue.

The transactions between appellee and the American Bank of Commerce & Trust Company and the successor of the latter were very extensive, covering many advances for various purposes and numerous credits, consisting principally of rice sold by the bank for the credit of appellee. Annual statements showing the balance due at the end of each crop year were furnished appellee, and the amount became larger until on January 12, 1927, the balance then due was over $36,000. The records of the bank and the testimony in regard thereto show that the balance did not include the purchase price of the farms which Hicks, trustee, had originally agreed should be reconveyed to appellee upon the condition hereinabove stated.

The bank took chattel mortgages upon appellee's rice crop each year and upon all appellee's personal property used in connection with the cultivation and marketing of the rice to secure current advances and balances carried forward.

Appellee was himself adjudged a bankrupt, and the schedule of his assets there filed was offered in evidence here. Included in the list of his assets was a tract of land not here involved, but the lands here involved were not included. The proceedings there are pleaded here as *res adjudicata;* but it does not appear that any transcript of the actions and orders of the bankruptcy court has been brought into this record, and the plea cannot, therefore, be sustained. *Crow Oil & Gas Co.* v. *Drain,* 171 Ark. 817, 286 S. W. 971; *Williams* v. *Maners,* 179 Ark. 110,

14 S. W. (2d) 1104; *Drew Gravel Co.* v. *Stell,* 180 Ark. 16, 20 S. W. (2d) 609.

The failure, however, of appellee to include the lands here involved in his schedule of assets is a circumstance which cannot be disregarded in determining whether appellee had paid for the lands and is entitled to have the title vested in him. His creditors were entitled to know what, if any, interest he had in the lands, and if it were substantial, as appellee now says it is, then it was a fraud to conceal that fact from his creditors. Appellee attempted an explanation of the omission, the substance thereof being that he depended upon the attorneys in the case, and that the bank was his principal creditor and he had settled with it by turning over all the mortgaged personal property and had been given a receipt in full.

The court entered a decree granting appellee the relief prayed, but found that beginning with the year 1926 the Central States Life Insurance Company had paid taxes amounting to $2,233.88, for which amount a lien was adjudged against the land. Appellant insists that if the taxes should be considered it was entitled to credit for the taxes paid by its predecessors in title, to-wit, by the American Bank of Commerce & Trust Company for the year 1923 and by the American Southern Trust Company for the years 1924 and 1925. We do not consider this question except to say that we do not concur in the finding that appellee has paid for this land and he is not, therefore, entitled to have it decreed him free and clear of all encumbrances except only the taxes, as was done, and if this be true no judgment should have been rendered against him for the taxes.

The decree of the court is responsive to the contention of appellee, which the court evidently found was sustained by the testimony, that appellee had paid for the lands. That he had done this from the sale of his personal property and from profits on his rice crops for the years 1923, 1924, 1925 and 1926, after repaying the banks all the money and the interest thereon which they had loaned him.

We think the testimony does not sustain this finding. The principal testimony to support that finding is that

of Mr. Sam T. Poe, who states that such is the fact, and the contract for the sale of the personal property just referred to. Mr. Poe represented the American Bank of Commerce & Trust Company and its successor in making loans to appellee and other rice farmers, and had general supervision of the cultivation and marketing of their crops. Appellee testified that Poe told him in 1924 that he had made enough profit in 1923 to pay for the first tract of land bought by Hicks as trustee in 1922, and that he later told him other profits had paid for the other farm. Poe corroborated this testimony, and expressed the opinion that the proceeds of the sale of the various rice crops, together with the proceeds of the personal property, were sufficient for this purpose. But we think he was mistaken and that the statement was a mere opinion. Poe did not keep the accounts. These were kept at and by the bank, and Poe's testimony does not show wherein or in what respects the accounts were erroneous.

It is undisputed that the bank did not charge appellee's account with the purchase price of the lands, and these items did not appear in any of the annual statements furnished appellee by the bank. The transaction relating to the purchase of the lands was entered upon the land book of the bank in the name of the Simmons Lands, but this, it was shown, was for the purpose of identification. The bill of sale to the personal property executed January 12, 1927, recites the purchase price of the personal property to be $36,941.75, and this appears to have been about the amount of the account, not including the purchase price of the lands.

The bill of sale, after valuing the personal property, recites that "* * * Said amount to be credited on my indebtedness now due the American Southern Trust Company direct, and which amount is secured by mortgages on all of the above-described property, and the property is to be accepted by the American Southern Trust Company in full of all indebtedness now due it by me, except whatever amount may be due by me to the American Southern Trust Company as assignee of the Bank of Gillett. which indebtedness the American Southern Trust Company now holds as collateral to secure indebtedness

of the Bank of Gillett to the American Southern Trust Company.''

It was there further recited that ''It is further stipulated and agreed that the above-named $36,941.75 is accepted by the American Southern Trust Company in full and complete settlement of my indebtedness to it, and the sum of $989.50 (the agreed purchase price of certain property described in the bill of sale upon which the Bank of Gillett had a mortgage) is to be accepted by the American Southern Trust Company, as assignee of the Bank of Gillett, which amount is to be credited on the indebtedness now owing by W. F. Simmons to the Bank of Gillett, which indebtedness is now held by the American Southern Trust Company.''

After the signature of Simmons appears a recital signed by Hicks, as vice president of the American Southern Trust Company, reading as follows: ''The American Southern Trust Company acknowledges receipt of the sum of $36,941.75, the price of the property herein first above listed, in full and complete settlement of all indebtedness now due by W. F. Simmons, and said indebtedness is now hereby satisfied and released.''

The personal property there sold for the consideration stated was the property upon which the bank had a chattel mortgage, and Hicks testified unequivocally that the debt there satisfied was the debt which the chattel mortgage secured, and that the settlement took no account of the purchase price of the lands, for the reason that those items had never been a part of the account and were not secured by the chattel mortgage. Hicks testified further that in selling and disposing of the personal property there described the bank sustained a loss of over $16,000, which was charged off as a loss. In other words, the bank received $16,000 less for the property than it had given appellee credit for. The books of the bank fully sustained this statement.

The conclusion appears inescapable that appellee not only paid nothing for the lands, but only paid the current account by being given a credit for $16,000 more than the personal property was worth. It appears very highly improbable that if this transaction, evidenced by

the bill of sale, was intended to pay for the lands, as well as to pay the debt which the chattel mortgage secured, that reference to that purpose was not made in that instrument.

Appellee offered in evidence numerous checks given various persons for various purposes. Many of these appear to cover operating expenses. No credit should be allowed for these expenditures, for the reason that appellee should have paid the cost of making the crops, inasmuch as he was given credit for their proceeds. It is said, however, that some of these checks were for permanent improvements, which would not have been made except for the assumption that appellee was in possession of the lands under a contract to purchase. The principal item is for $4,225.94, which appellee claims to have paid for a new pumping outfit. It is answered, however, that this outfit was not installed on the lands here in controversy, but on an adjacent tract of land owned by appellee, and that there is no pumping machinery of any kind on the lands here involved. It is suggested, but not established by the testimony, that the bank furnished money with which this and other improvements were made.

The appellant insurance company, which now appears to be the only party having an interest adverse to appellee, professes a willingness, even yet, to accept the purchase money which it paid for the lands and the taxes which it has paid, with the interest thereon, in satisfaction of its claim of title to the lands. It appears to us, therefore, that justice will be done if appellee is afforded an opportunity to make this payment.

The decree of the court below will, therefore, be reversed, and the cause will be remanded, with directions to enter a decree dismissing appellee's suit for specific performance, unless appellee shall, within ninety days after the date of the rendition of this opinion, tender into court the purchase money, taxes and interest aforesaid.