Lewis *v.* Fidelity Savings & Trust Company.

4-7391                         181 S. W. 2d 22

Opinion delivered June 12, 1944.

E. H. *Tharp,* for appellant.

W. M. *Ponder* and *Smith & Judkins,* for appellee.

McFADDIN, J. This case involves the ownership of forty acres of land in Lawrence county, Arkansas. Appellant, Fritz Lewis, claims under a state deed and two years' possession thereunder, and relies on § 8925 of Pope's Digest. Appellee is the mortgagee of Harry Lewis (father of Fritz Lewis) and claims that the state deed held by Fritz Lewis was, in effect, a redemption

by Harry Lewis, and that § 8925 of Pope's Digest does not apply. Before considering these respective contentions we give an account of the events leading up to the present controversy.

Sometime prior to 1934 the said Harry Lewis, for value received, executed a note to the New England Securities Company for $800, and, as security, executed a first mortgage on the land here involved. The indebtedness and mortgage were duly assigned to the appellee before maturity; and when the indebtedness became past due the appellee (Fidelity Savings & Trust Company) filed a foreclosure suit against Harry Lewis in the chancery court of the Eastern District of Lawrence county. The foreclosure was filed December 20, 1934; and the sale by the Commissioner was on December 20, 1935; and the land was bought by the Fidelity Savings & Trust Company (the plaintiff in the foreclosure) for its debt of $800.

Before the sale was confirmed, Harry Lewis filed composition proceedings (on January 9, 1936) in the United States District Court for the Eastern District of Arkansas under that section of the Bankruptcy Act, commonly designated as the Frazier-Lemke Act. This caused a stay of all proceedings in the said foreclosure suit; and this stay continued until January 23, 1940, as will be mentioned hereinafter. (The present Frazier-Lemke Act may be found in U.S.C.A., Title 11, § 203 ff, where the history of the first Frazier-Lemke Act may be found.) In his schedules in the said composition proceedings in the United States District Court, Harry Lewis listed the mortgage to the appellee on the land, and also listed unpaid taxes due the state and county on the land, but there does not appear in the record, here, any order made in the composition proceedings concerning these taxes.

At any rate, the 1933 state and county taxes were unpaid, and the land forfeited to the state in 1934 and was certified to the state in December, 1936. Thereafter —on March 8, 1937—John L. Fry obtained a deed from

the State Land Commissioner for the said land for $41; and, five days later John L. Fry and wife conveyed the said land to Fritz Lewis for a consideration of $41. Harry Lewis, the mortgagor, lived on the land at all times until after 1941. In 1938, in the Frazier-Lemke proceedings, he still claimed the lands. He paid the taxes on the land for the years 1938 to 1941, inclusive. On June 10, 1937, he filed claim with the proper county authority claiming the land as a homestead and therefore exempt from state taxes under Act 247 of 1937; and again on March 20, 1942, he filed a similar affidavit. When there arose some necessity to secure the reinstatement of the Frazier-Lemke proceedings, Harry Lewis told the County Conciliation Commissioner: "I think I will go ahead and reinstate the petition, but it is not a matter of any great importance; because I have already taken care of it. The land has gone back to the state, and I have arranged with John L. Fry to buy the land from the state, and after he buys it then to convey it to Fritz Lewis."

The Frazier-Lemke proceedings were not finally dismissed until January 23, 1940. Immediately thereafter the Fidelity Savings & Trust Company completed its foreclosure suit by having the sale approved and the deed delivered on February 19, 1940. This present suit was filed by the appellee against Harry Lewis and Fritz Lewis, on December 16, 1940, alleging in substance, *inter alia,* that the forfeiture to the state, and the deed to Fry, and from him to Fritz Lewis, were all a scheme to defeat the Fidelity Savings & Trust Company; and that the said deeds should be held a redemption by Harry Lewis; and that the said deeds should be canceled and title vested in appellee; and for all other proper equitable relief. A tender of $41 to Fritz Lewis for tax money was alleged. Fritz Lewis and Harry Lewis made joint answer and defense all through the trial, except that Fritz Lewis pleaded two years' adverse possession under the state deed. Questions concerning rents and improvements were also in the pleadings and the evidence.

436

The chancery court entered a decree on September 28, 1943, finding that the Fidelity Savings & Trust Company was the owner of the land, and cancelling the state deed to Fry and Fry's deed to Fritz Lewis as clouds on the title, and ordering possession to be delivered to the Fidelity Savings & Trust Company. The court found that the rents equaled the taxes and repairs; and gave neither side any money judgment. Fritz Lewis and Harry Lewis have prosecuted this appeal; and, as previously stated, Fritz Lewis claims under the state deed and two years' possession thereunder and relies on § 8925 of Pope's Digest. The appellee claims that Fritz Lewis, in effect, redeemed for Harry Lewis and that, therefore, the statute does not apply.

Section 8925 of Pope's Digest states expressly that it does not apply if: "the plaintiff, his ancestors, predecessors, or grantors was, (were) seized or possessed of the lands in question within two years next before the commencement of such suit or action." Any possession of Fritz Lewis was by his father, Harry Lewis, who claimed that he remained on the land as tenant of his son, Fritz Lewis. But Harry Lewis occupied a prior relationship to the Fidelity Savings & Trust Company, in that he was the original mortgagor, and his relationship as mortgagor to the Fidelity Savings & Trust Company was antecedent to the alleged tenant relationship to his son. Until he openly disavowed the antecedent relationship, he could not claim to be adverse to the mortgagor relationship; and no such disavowal was made.

We have repeatedly held that when the mortgagor permits the mortgaged premises to sell for taxes and to be purchased by a member of his family, or other confederate, then equity may treat the tax purchase as a redemption by the mortgagor. Cases directly in point are *Adams* v. *Sims*, 177 Ark. 652, 9 S. W. 2d 329; and *Williams* v. *Maners*, 179 Ark. 110, 14 S. W. 2d 1104. See, also, *Zimmerman* v. *Franklin County Savings Bank*, 194 Ark. 554, 108 S. W. 2d 1074; *Humphreys* v. *McKnight*, 202 Ark. 715, 152 S. W. 2d 567; and *Renn* v. *Renn, ante*, p. 147, 179 S. W. 2d 657, decided April 17, 1944. In the last cited case

we said: "Where property is allowed to forfeit for taxes, and then some member of the family (or other confederate) acquires a deed from the state or taxing agency, equity will examine the transaction to see if it was a fraudulent conveyance; and upon ascertaining such to be the fact, then the purchaser will be held a trustee, or the entire transaction will be held a redemption by the original owner. Regardless of the form of relief, equity will pierce the sham of the fraudulent conveyance." The above quotation applies to the case at bar. Harry Lewis was all the time living on the land, and claiming it as his own, and receiving tax exemption because of it being his homestead. Fritz Lewis redeemed for his father, Harry Lewis, and therefore there was no adverse possession under § 8925 of Pope's Digest. The equities are all with the appellee.

It follows that the decree of the chancery court was correct and is in all things affirmed.